UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **COLUMBUS CHRIS WILLIAMS** | **CIVIL ACTION** |
| **VERSUS** | **NO. 04-1173** |
| **TERREBONNE PARISH SHERIFF'S OFFICE, ET AL** | **U.S. Magistrate Judge Karen Wells Roby** |

## ORDER AND REASONS

This matter is now before the Court upon consent of the parties pursuant to Title 28 U.S.C. § 636(c).[1] The sole remaining defendant, Nurse Marge Whitney, filed a **Motion for Summary Judgment (Rec. Doc. No. 88)** and a **Motion for Sanctions Pursuant to Rule 11 (Rec. Doc. No. 92)**. In the first motion, Whitney seeks dismissal of the plaintiff's medical indifference claims against her. Whitney argues that she was not intentionally indifferent to the plaintiff's serious mental health or medical needs nor did she deny him needed medical care for his diabetes. In the second motion, Whitney seeks to have sanctions, including costs and attorneys' fees, assessed against the plaintiff for his continual filing of frivolous complaints, including the instant complaint.

The plaintiff, Columbus Chris Williams ("Williams"), filed written oppositions to both motions. (Rec. Doc. Nos. 90, 93, 94). In addition, Williams filed two **Motions for Summary**

---
[1] Rec. Doc. No. 89.

**Judgment (Rec. Doc. Nos. 103, 104)** seeking to hold Whitney liable to him for intentional indifference to his medical needs arising out of his cancelled psychiatric appointment.

I.   **Factual Summary**

    A.   **The Original Complaint**

Williams is incarcerated in the Terrebonne Parish Criminal Justice Complex ("TPCJC") in Houma, Louisiana.  He filed the original *pro se* complaint pursuant to Title 42 U.S.C. § 1983 against the Terrebonne Parish Sheriff's Office, the Terrebonne Parish Consolidated Government, the Terrebonne Parish Criminal Justice Complex Medical Department, and Judge John Walker of the 32nd Judicial District Court for Terrebonne Parish.

Williams alleges that he was charged with and arrested on five counts of public intimidation and three counts of terrorizing.  He further indicates that, at the time of the filing of this complaint, he was a pretrial detainee and had no anticipated release date.  He further seeks to sue Judge John Walker for refusing to release him on bond.

Williams alleges that he is a fifty-seven-year-old diabetic who has lost weight from the time of his entry into the prison system in October of 2003 through the time of the filing of this lawsuit.  He complains that the diet at the jail within the Terrebonne Parish Criminal Justice Complex ("TPCJC") consists of white rice, creamed corn, and white potatoes, which are not appropriate for a diabetic.  He also complains further that the food is always ice cold and hard.  He alleges that he lost more than 30 pounds since his incarceration allegedly due to the poor diet supplied by the defendants.

Williams seeks to have a regular diabetic diet, warm or hot meals sufficient in vitamins and minerals, and no eggs. He further seeks to have the defendants monitor his weight and to provide him with insulin. He seeks monetary compensation as a result of the poor diet.

### B.     The Amended Complaints

In his amended complaints, Williams alleges that, during 2000, the State District Court had a mental health psychologist classify him as mentally ill. He further alleges that Maggie Whitney, R.N., the nursing supervisor at TPCJC, cancelled another psychiatric appointment in 2004 without cause or concern for his criminal proceeding.

Williams claims that, on February 6, 2004, Whitney wrote a letter to Dr. Dennis Spiers, a mental health doctor, to cancel the appointment Williams had on February 5, 2004. Williams alleges that Whitney wrote in the letter that the appointment was cancelled for security reasons because Williams knew of the date and time. Under a broad reading, Williams alleges that Nurse Whitney's cancellation of this medical appointment amounted to the denial of mental health care and a lack of concern for his continued detention.

Williams also alleges that Whitney refused to request that the prison doctor order him a peanut butter sandwich as his evening and Friday afternoon meals. He also claims that the prison's regular diet causes other medical side effects, such as heartburn and chest pains. He also complains that Whitney fails to comply with the doctor's instruction to give him insulin at noon and instead gives it to him at 4:00 a.m. and 4:00 p.m. when she does her other rounds. As a result, he alleges that Whitney fails and refuses to properly monitor his diabetes.

### C.     Williams's Clarified Claims at the Preliminary Conference With the Court

On June 14, 2005, the Court held a conference with the parties for the purpose of scheduling trial and pretrial dates. During that conference, which was recorded, Williams clarified that his only claim against Whitney arises out of the cancellation of the February 5, 2004 visit and her failure to reschedule it. He stated that the appointment was with Dr. Spiers in connection with the Sanity Commission determination in connection with his pending criminal charges. As a result, he remained in jail without a Sanity Commission hearing and could not proceed to trial or gain his release.

## II.     Procedural Background

On the recommendation of the undersigned Magistrate Judge, the District Court issued an Order on March 30, 2005, in which it resolved several of the defendants' dispositive motions and the plaintiff's motions to amend and clarify his claims.[2] By this Order and the related Rule 54 Judgment, the Court dismissed with prejudice the claims against the Terrebonne Parish Sheriff's Office, John Walker, the Terrebonne Parish Consolidated Government, the Terrebonne Parish Criminal Justice Complex Medical Department, and Nurse Marge Whitney in her official capacity only.[3]

As a result, the only remaining claims before the Court are Williams's medical indifference claims against Nurse Margie Whitney in her individual capacity. These claims are the subject of the instant Motion for Summary Judgment.

---

[2] Rec. Doc. No. 71, 76.

[3] Rec. Doc. No. 76, 77.

## III. Standards of Review

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Fields v. City of Southern Houston*, 922 F.2d 1183, 1187 (5th Cir. 1991). The Court's task is not to resolve disputed issues of fact, but to determine whether there exists any factual issues to be tried. *See Andersen v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-49 (1986). In making this determination, all of the facts must be viewed in the light most favorable to the non-moving party. *Id.*, at 248.

The moving party bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). Once the moving party carries its burden of proving that there is no material factual dispute, the burden shifts to the nonmovant "to show that summary judgment should not lie." *Hopper v. Frank*, 16 F.3d 92, 96 (5th Cir. 1994). While the court must consider the evidence with all reasonable inferences in the light most favorable to the nonmovant, the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial. *See Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). This requires the nonmoving party to do "more than simply show that there is some metaphysical doubt as to the material facts." *Id.*

Instead, the nonmoving party must "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue of fact for trial." *Celotex Corp*, 477 U.S. at 324. If the record

taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. *See Szabo v. Errisson*, 68 F.3d 940, 942 (5th Cir. 1995); *Davis v. Chevron U.S.A., Inc.*, 14 F.3d 1082, 1085 (5th Cir. 1994).

## IV. Motions for Summary Judgment

Both the defendant, Nurse Whitney, and the plaintiff have filed motions seeking summary judgment with regard to the remaining claims against Nurse Whitney. The Court addresses both motions herein, as the plaintiff's recently filed motion for summary judgment and supporting documentation (Rec. Doc. No. 103, 104) actually restates his opposition to Whitney's prior motion (Rec. Doc. No. 88).

### A. Whitney's Motion for Summary Judgment (Rec. Doc. No. 88)

Nurse Whitney filed a Motion for Summary Judgment contending that she was not indifferent to Williams's medical needs. In support of her motion, she submits her affidavit and certified copies of portions of Williams's medical records, including those notes and letters related to the cancelled appointment. Whitney contends that these documents establish that she was not indifferent to Williams's serious medical needs and that she is entitled to judgment as a matter of law. Whitney specifically attests and argues that Williams receives adequate medical care and diet for his diabetes. She further contends that she did not intend harm and that she was otherwise required to cancel the February 4 appointment in accordance with prison policy.

Whitney therefore argues that the summary judgment evidence shows that Williams's received the appropriate treatment and diet for his diabetes and that the February 5, 2004, psychiatric examination was cancelled for security reasons.

## B. Williams's Opposition and Cross Motions for Summary Judgment (Rec. Doc. Nos. 103, 104)

Williams does not dispute the medical facts outlined by Whitney or the records attached to her motion for summary judgment. In fact, he argues too that there are no issues of fact left to be tried. He further indicates that the only issue for the Court to consider is whether Nurse Whitney cancelled the mental health appointment with Doctor Dennis Spiers on February 4, 2005 and whether that event adversely affected his criminal proceeding and caused him to remain in jail unnecessarily. He has not, however, moved to dismiss the other medical indifference claims pending before the Court requiring the Court to nevertheless consider summary judgment as to those claims.

Williams argues in his opposition and cross-motion that when Whitney cancelled his February 5, 2004 psychiatric appointment, she caused him to remain on the medical ward and may have compromised his criminal proceedings. Williams offers no challenge to the fact that he receives at the prison a diabetic diet and medical treatment for his diabetes.

Williams also now concedes in his opposition that the sole purpose for his appointment with Dr. Spiers on February 5, 2004, was to evaluate his mental state for purposes of receiving Social Security disability benefits. He thereby has abandoned his earlier allegation that the psychiatric appointment was connection to the Sanity Commission and his criminal proceedings.

Williams further concedes that, once he was incarcerated, he was not entitled to the disability benefits for which he was to see Dr. Spiers. However, he argues that, had he been evaluated by Dr. Spiers, he may have been able to submit the evaluation to the state district court in connection with his criminal proceedings, in which he claimed mental incompetence. Williams, therefore, suggests that Whitney should not involved herself with his private medical appointment. Williams also

argues that the prison allows inmates to make scheduled court appearances and should not have a different policy to prevent outside medical appointments when the inmate is aware of the time and date.

### C.     Standards of Review for Medical Indifference Claims

In considering the degree of medical care due prisoners, federal courts apply the same standard to both arrestees and pretrial and convicted inmates. *Hare v. City of Corinth, Ms.*, 74 F.3d 633, 650 (5th Cir. 1996). The standard of conduct imposed on defendants with respect to the medical care of inmates was clearly established by the Supreme Court in *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).

In *Estelle*, the Court held that deliberate indifference to serious medical needs of prisoners constitutes the "unnecessary wanton infliction of pain," proscribed by the Eighth Amendment. *Estelle*, 429 U.S. at 97, 104; *Stewart v. Murphy* 174 F.3d 530, 533 (5th Cir. 1999) (*quoting Estelle*, 429 U.S. at 104); *Harris v. Hegmann*, 198 F.3d 153 (5th Cir. 1999). Section 1983 permits recovery for serious physical harm "only where the defendant acts intentionally" or with an analogous state of mind usually described as "deliberate indifference" to deprivation of the victim's constitutional right. *See Manarite v. City of Springfield*, 957 F.2d 953, 955 (1st Cir.), *cert. denied*, 506 U.S. 837 (1992) (citing *Canton v. Harris*, 489 U.S. 378, 388-390 (1989)) (discussing deliberate indifference standard in Fourteenth Amendment municipal liability, police denial of medical treatment case). The Supreme Court defined the "deliberate indifference" to mean that a prison official is liable "only if he knows that the inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer*, 511 U.S. at 847;   *Stewart*, 174 F.3d at 534; *Reeves*, 27 F.3d at 176; *see also Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir. 1998).

"Deliberate indifference encompasses only the unnecessary and wanton infliction of pain repugnant to the conscience of mankind." *McCormick v. Stalder*, 105 F.3d 1059, 1061 (5th Cir. 1997); *see also Bradley*, 157 F.3d at 1025.

In some circumstances, even a delay in providing needed medical treatment may amount to a constitutional violation. *See Benson v. Cady*, 761 F.2d 335 (7th Cir. 1985); *Duncan v. Duckworth,* 644 F.2d 653 (7th Cir. 1981). However, the delay must be caused by the defendant's deliberate indifference if it is to rise to the level of a constitutional violation. *See Estelle,* 429 U.S. at 104-05.

Therefore, in order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference that can offend "evolving standards of decency" in violation of the Eighth Amendment. *Estelle*, 429 U.S. at 104.

However, a complaint that a physician, medical care provider, or other official has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. *Id*. An inmate's disagreement with his medical treatment does not give rise to a constitutional claim under § 1983. *Norton v. Dimazana,* 122 F.3d 286, 292 (5th Cir.1997). Therefore, inadequate medical treatment of inmates may, at a certain point, rise to the level of a constitutional violation, while malpractice or negligent care does not. *Mendoza v. Lynaugh*, 989 F.2d 191, 193 (5th Cir. 1993) ("It is clear that negligent medical treatment is not a cognizable basis upon which to predicate a section 1983 action"); *Williams v. Treen*, 671 F.2d 892, 901 (5th Cir. 1982) ("mere negligence in giving or *failing to supply* medical treatment would not support an action under Section 1983" (emphasis added)); *see also Jackson v. Cain*, 864 F.2d 1235, 1246 (5th Cir. 1989).

**D.     Analysis**

The medical records, submitted as summary judgment evidence, show, that on January 29, 2004, the Louisiana Department of Social Services sent Williams a letter advising him that he had an appointment with Dr. Dennis Spiers in connection with his application for disability benefits.[4]

On February 4, 2004, Nurse Whitney noted that she called Dr. Spiers's office and spoke with Yvette, who verified that Williams had an appointment set for February 5, 2004, for an initial assessment for Social Security Disability Benefits.[5] Whitney advised her that Williams was in jail and Yvette indicated that she would notify the Social Security Office. Whitney also noted that Williams would not be sent to the appointment because of the fact that he was aware of the date and time in violation of the prison's security policy. Whitney sent a formal letter to Dr. Spiers on February 6, 2004, in connection with the cancellation of the private appointment.[6]

The records also show that Williams completed a request form on November 15, 2004 requesting that he be given peanut butter sandwiches, soup, or white beans at night instead of food containing cold cuts, cheese, red meat, potatoes or white rice.[7] Nurse Whitney wrote the Administrative Response stating that he is provided with a 2000 calorie diabetic diet with no recorded allergies to cold cuts, red meat, rice or potatoes. She offered no change to his diet.

---

[4]Whitney Exh. 4.

[5]Whitney Exh. 3.

[6]Whitney Exh. 5, 6.

[7]Whitney Exh. 2, Inmate Request Form, 11/15/04.

On December 13, 2004, Williams submitted a request for medical attention form requesting that his diabetic diet be changed because cold cuts give him chest pains.[8] He was referred to the doctor.

Williams filed another request for medical attention form on December 13, 2004, in which he requested that his insulin be given at noon because his blood sugar increases after the noon meal.[9] The medical staff[10] response indicates that the procedure for insulin and doctors' orders are for his blood sugar to be checked and insulin given at 4:00 a.m. and 4:00 p.m.

The records also contain a medical diet slip issued by Nurse Whitney which is dated December 14, 2004.[11] The slip reflects that Williams receives a 2000 calorie diabetic diet with no sugar, no Equal, no eggs, no milk, and no mayonnaise. The form also bears the following notation: "Kitchen notified to clarify diet."

On December 16, 2004, Williams was examined by Dr. Scott Haydel, a physician at the jail.[12] The notes indicate that Williams requested a substitute for cold cuts because they give him chest pains. While some of his medication was changed for other ailments, the doctor made no change to the diet.

---

[8]Whitney Exh. 2, Request for Medical Attention Form, 12/10/04.

[9]Whitney Exh. 2, Request for Medical Attention Form, 12/13/04.

[10]The notation is initialed but name is unidentifiable.

[11]Whitney Exh. 2, Medical Diet Slip, 12/14/04.

[12]Whitney Exh. 2, Doctors and Nurses Notes, 12/16/04.

Williams again requested on December 20, 2004, that he be given peanut butter sandwiches at his evening meal because his blood sugar drops at night when he takes insulin.[13] Nurse Whitney responded that on December 16, 2004, Dr. Haydel assessed Williams and his lab results and medications, with no order to change his diet.

Two months later, on February 8, 2005, Williams requested that he be given insulin at noon because his blood sugar readings are high at the 4:00 p.m. check.[14] Nurse Whitney replied to the request indicating that Williams was often non-compliant with his insulin medication and must take his medicine as prescribed at the times ordered for it to be effective. Williams made the same request on February 9, 2005 and received the same response.[15]

Another two months passed and Williams made a request on April 13, 2005, to the Emergency Medical Technician (EMT) to have his blood sugar checked.[16] Because his blood sugar was elevated from the 4:00 a.m. reading, he was given additional insulin. The EMT continued to monitor him every half hour and administered additional insulin as needed until noon that day when the blood sugar level returned to normal.

Two weeks later, on April 28, 2005, Williams began an all day tirade, including kicking his cell bars, because he was no longer receiving pain medication.[17] He told the medical staff and guards that he would not eat or take his diabetes medication until he received more pain medication.

---

[13]Whitney Exh. 2, Inmate Request Form, 12/20/04.

[14]Whitney Exh. 2, Request for Medical Attention Form, 2/8/05.

[15]Whitney Exh. 2, Inmate Request Form, 2/9/05.

[16]Whitney Exh. 2, Doctors and Nurse Notes (2 pages), 4/13/05.

[17]Whitney Exh. 2, Doctors and Nurses Notes (4 pages), 4/28/05.

The record shows, however, that the medical staff, including Nurse Whitney, attended to his regular medical scheduled that day.

The Court finds that the summary judgment evidence confirms that Williams's received prompt and complete medical care for his diabetes, including the appropriate diet as ordered by the prison medical staff.[18] Williams does not refute that he received the diet as prescribed. He merely indicates that he would have preferred peanut butter sandwiches to cold cut sandwiches. When he discussed this complaint with the prison doctor, the doctor did not order any change to his diet.[19] Nurse Whitney did not prevent Williams from making the diet change request to the doctor as Williams suggested in his amended complaint.

Williams also received his insulin and blood sugar checks in the appropriate manner and time suggested by the record. Whitney contends that the blood sugar checks and insulin distribution were done in compliance with physicians' orders pursuant to the policies of the medical department. Williams does not dispute that the policy required that his medication be dispensed at 4:00 a.m. and 4:00 p.m. The medical records show that, on April 13, 2005, when Williams's blood sugar became unstable at 4:00 a.m., the medical staff monitored his condition every half hour and adjusted his medication until his blood sugar levels returned. He has not established that the schedule for medication and blood sugar checks followed by Whitney and the medical staff amounted to an indifference to his medical needs.

Instead, Williams merely suggests that, in his belief, it would have been better to take the insulin with his noon meal to prevent his blood sugar from increasing in the afternoon hours.

---

[18]*See* Whitney Exh. 2, Medical Diet Slip, 12/14/04.

[19]*See* Whitney Exh. 2, Doctors and Nurses Notes, 12/16/04.

However, any disagreement Williams may have had with the treatment plan is not sufficient to state a medical indifference claim in violation of the Eighth Amendment. *Norton,* 122 F.3d at 292. Williams's has not established by competent evidence that Nurse Whitney did anything to restrict the care he received or that she was intentionally indifferent to a serious medical need.

Furthermore, Williams does not refute that he knew about the February 5, 2004, appointment scheduled with Dr. Spiers, the psychiatrist. He also does not adequately challenge that Whitney complied with prison policy when she cancelled the appointment for security reasons. Instead, he submits summary judgment evidence in connection with his own motion which would suggest that Whitney was in compliance with security policy.[20]

Williams further acknowledges that the appointment was for the private purpose of securing disability benefits, to which he now concedes he is no longer entitled.[21] Williams also offers no more than mere speculation that Dr. Spiers would have issued a report which would have been considered by the state trial court and/or the sanity commission. He has therefore failed to establish how Whitney's cancellation of the appointment in anyway compromised his medical care at the prison.

For these reasons, there are no genuine issues of fact on this issue and Whitney is entitled to judgment as a matter of law. Williams's medical indifference claims against Whitney must be dismissed with prejudice and his cross-motions for summary judgment denied.

---

[20]Rec. Doc. No. 103, 104 (Attachments thereto).

[21]Williams's concession is apparently based on the law which reflects that an inmate may not receive disability benefits unless and until he is released from prison. *See* 42 U.S.C. § 423(f)(1); *see also*, *Brue v. Heckler*, 709 F.2d 937 (5th Cir. 1983).

## V.       Motion for Fed. R. Civ. P. 11 Sanctions

Whitney also moves this Court pursuant to Fed. R. Civ. P. 11 to assess sanctions, costs, and attorneys' fees against Williams for his continued filing of frivolous suits like this one.[22] Williams opposes the motion because he asserts that his claims against Whitney have merit.[23]

Rule 11(b) provides in pertinent part as follows:

> By presenting to the court (whether by signing, filing, submitting, or later advocating) a pleading, written motion, or other paper, an attorney ⋯ is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,- (1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation; [and] (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law·. . .

Fed. R. Civ. P. 11(b).

Each obligation must be satisfied; violation of either justifies sanctions. *See e.g.*, *Walker v. City of Bogalusa*, 168 F.3d 237, 241 (5th Cir.1999). In determining compliance, *vel non*, with each obligation, "the standard under which an attorney is measured is an objective, not subjective, standard of reasonableness under the circumstances." *Childs v. State Farm Mut. Auto. Ins. Co.*, 29 F.3d 1018, 1024 (5th Cir.1994).

In this case, Whitney alleges that Williams violated the second prong of Rule 11(b) because his claims are frivolous and because he continues to file frivolous civil actions in this federal court. First, the Court notes that Williams claims against Whitney were not dismissed as frivolous but

---

[22]Rec. Doc. No. 92.

[23]Rec. Doc. No. 93, 94.

instead are being dismissed as a result of the motion for summary judgment. The claims against the other defendants in this action were also dismissed after review of dispositive motions.

Second, Whitney does not identify or discuss any of Williams's prior cases to which she refers. The Court's independent review of its records shows that Williams has filed 25 civil rights lawsuits in the Eastern District of Louisiana. The records also indicate that six of those prior suits were dismissed as frivolous pursuant to the pauper statute, Title 28 U.S.C. § 1915, and the Court's mandatory review for frivolousness thereunder.[24] As a result of these frivolous filings, Williams has been statutorily sanctioned.

That is, the Prison Litigation Reform Act of 1996, Pub. L. No. 104-134, 110 Stat. 1321, now codified at Title 28 U.S.C. § 1915(g), provides that a prisoner shall not be allowed to bring a civil action as a pauper pursuant to § 1915 if he has, on three or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed as frivolous, malicious, or for failure to state a claim for which relief can be granted, unless the prisoner is under imminent danger of serious physical injury. As a result of this statutory sanction, Williams is no longer allowed to proceed as a pauper in this, or any other, federal district or appellate court. He is required to front any filing fee and other costs before proceeding with a civil action.

Finally, Whitney seeks to collect attorneys' fees and costs as part of the Rule 11 sanctions sought. The conclusory affidavit submitted by counsel is thoroughly inadequate to support any such request. The Fifth Circuit has noted that "[a] reasonable attorneys' fee is one that is adequate to

---

[24]These cases are: *Williams v. Larpenter*, 01-3697 "F"(2); *Williams v. Larpenter*, 01-3733 "R"(1); *Williams v. Larpenter*, 01-3731 "F"(1); *Williams v. Larpenter*, 01-3732 "M"(4); *Williams v. Terrebonne Parish Consolidated Government*, 02-0443 "K"(5); and *Williams v. Larpenter*, 02-0495 "K"(5).

attract competent counsel, but . . . that does not produce windfalls to attorneys." *Leroy v. City of Houston*, 906 F.2d 1068, 1078-1079 (5th Cir. 1990) (internal quotations omitted) (quoting *Blum v. Stenson*, 465 U.S. 886 (1984). The party seeking attorney's fees has the burden of establishing the reasonableness of the fees by "submit[ting] adequate documentation of the hours reasonably expended." *Wegner v. Standard Ins. Co.*, 129 F.3d 814, 822 (5th Cir.1997). Whitney has failed to present any such documentation to support the fees or costs allegedly expended by counsel in this litigation. Whitney also has failed to show how those expenditures by counsel relate specifically to her, Whitney, as the movant. Accordingly,

**IT IS ORDERED** that the **Motion for Summary Judgment (Rec. Doc. No. 88)** filed by the defendant, Nurse Margie Whitney, seeking dismissal of plaintiff's medical indifference claims against her is **GRANTED** and the plaintiff Columbus Chris Williams's medical indifference claims against Nurse Margie Whitney are **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that the **Motions for Summary Judgment (Rec. Doc. Nos. 103, 104)** filed by the plaintiff, Columbus Chris Williams, are **DENIED**.

**IT IS FURTHER ORDERED** that the **Motion for Sanctions Pursuant to Rule 11 (Rec. Doc. No. 92)** is **DENIED**.

The jury trial in this matter is **CANCELLED** as there are no remaining issues to be tried.

New Orleans, Louisiana, this __24th__ day of February 2006.

**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**